In the

# United States Court of Appeals

## For the Seventh Circuit

No. 24-1623

JAMES C. HULCE, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant*,

*v.*

ZIPONGO INC.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 23-cv-159 — **Lynn Adelman**, *Judge*.

ARGUED NOVEMBER 12, 2024 — DECIDED MARCH 17, 2025

Before SYKES, *Chief Judge*, and BRENNAN and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Zipongo Inc., which does business as Foodsmart, called and texted James Hulce about free nutritional services it offered through Hulce's state and Medicaid funded healthcare plan. In response, Hulce brought a putative class action suit against Foodsmart alleging that it violated the Telephone Consumer Protection Act ("TCPA") and

the TCPA's implementing regulations by initiating prohibited "telephone solicitations."

After finding that the calls and messages Hulce received did not fall within the meaning of "telephone solicitation," the district court granted Foodsmart's motion for summary judgment. We affirm. Foodsmart did not initiate communications with Hulce for the purpose of encouraging someone who makes the purchasing decision to purchase its services.

**I**

Foodsmart is a for-profit company that provides nutritional consultations to individuals. These consultations can include dietary assessments, cost-effective meal planning, and help enrolling in government assistance programs. While individuals can sign up for Foodsmart's services directly, Foodsmart focuses its efforts on contracting with healthcare plans that offer its consultations to plan members.

Chorus Community Healthcare Plans ("CCHP") is one such healthcare plan. CCHP and Foodsmart agreed that Foodsmart would provide its services at no cost to CCHP members. This meant that members would not pay any fee, copay, or coinsurance for Foodsmart's services. Instead, Foodsmart would bill CCHP if a plan member met with a registered dietician. For members who received benefits through Medicaid, CCHP would also pay Foodsmart a yearly fee per Foodsmart patient or app user and performance bonuses if its plan members met certain health metrics.

James Hulce used CCHP as his healthcare plan during the period relevant to this suit. He selected CCHP through his enrollment in BadgerCare Plus, a healthcare program funded by the State of Wisconsin and Medicaid.

Hulce alleged that he received approximately twenty calls and text messages from Foodsmart—all while his name was on the national do-not-call registry. As one example, Foodsmart, through a contracted call service, left Hulce the following voicemail:

> Hi James, this is Cassandra. I'm calling on behalf of the Children's Community Health Plan and [F]oodsmart to let you know about a giveaway [] we are currently running as part of your CCH[P] membership. You could be entered to $100 [sic] by participating in the zero cost Telehealth visit and completing a nutritional assessment. Please call us back … as soon possible so we can get you entered into the giveaway.

Hulce also received a text message from Foodsmart:

> October is the month of sweet treats & pumpkin spice everything. Make meeting with a personal dietician part of your Fall routine & balance your blood sugar
>
> Bundle Up! Get a $25 gift card when you complete a no cost visit in Oct., and $25 for taking the Foodsmart Nutriquiz!

The text message included emojis, a link, and ended with "Reply stop to unsubscribe." Hulce unsubscribed from text messages, asked Foodsmart's contracted call service to stop contacting him, and sent two grievance letters to CCHP about the communications.

Aggravated by continued calls, Hulce filed a putative class action suit in the Eastern District of Wisconsin. He alleged that Foodsmart violated the TCPA and Federal Communications Commission's (FCC) implementing regulations by initiating "telephone solicitations" while he was on the national do-not-

call registry and despite his requests for the calls and messages to stop. *See* 47 C.F.R. § 64.1200(c)(2); 47 C.F.R. § 64.1200(d), (e).[1]

Foodsmart moved for summary judgment at the close of an initial discovery period. The relevant issue for this appeal is Foodsmart's argument that the communications Hulce received fell outside the definition of "telephone solicitation," which requires "the initiation of a telephone call or message for the purpose of encouraging the purchase … [of] services." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). Based on its interpretation of "encouraging" and "purchase," the district court agreed, and accordingly granted Foodsmart's motion. Hulce now appeals.

## II

We review a district court's grant of summary judgment de novo, affirming only if there are no issues of material fact and Foodsmart is entitled to judgment as a matter of law. *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 63 F.4th 1121, 1125–26 (7th Cir. 2023). We also review questions of statutory interpretation de novo. *Ambassador Animal Hosp., Ltd. v. Elanco Animal Health Inc.*, 74 F.4th 829, 831 (7th Cir. 2023).

---

[1] In enacting the TCPA, Congress granted the FCC statutory authority to create rules protecting consumers from unwanted "telephone solicitations." *See* 47 U.S.C. § 227(c). The FCC promulgated the regulations at issue here pursuant to its delegated authority and incorporated Congress's definition of "telephone solicitation" within them. 47 C.F.R. § 64.1200(f)(15).

No. 24-1623                                                                 5

**A**

The sole question we address on appeal is whether the calls and messages Hulce received fall within the definition of "telephone solicitation." With limited exceptions not relevant here, "telephone solicitation" is defined as:

> the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15).

The parties' dispute centers around the meaning of "encouraging."[2] Whereas Foodsmart argues that the purpose of the call must be "to persuade" or "urge" someone to make a purchase, Hulce argues that the purpose of the call need only be to make a purchase "more likely to happen." To Hulce, Foodsmart initiated its communications with him for this very purpose—they made it more likely that he would use Foodsmart's services, which would result in CCHP paying Foodsmart. "Telephone solicitations," according to Hulce, are essentially "commercial messages designed to increase … Foodsmart's profits."

We interpret the statutory text using various tools, starting with the text's "ordinary, contemporary, common meaning." *Delaware v. Pennsylvania*, 598 U.S. 115, 128 (2023). To

---

[2] Hulce also argues that "purchase" can include "obtaining something by labor, danger, or sacrifice," which Hulce would have done by taking time to meet a Foodsmart dietician. We reject this definition of purchase because the TCPA clearly contemplates payment for property, goods, or services.

determine this meaning, we may turn to dictionaries for guidance. *See id.* But "[t]hat a definition is broad enough to encompass one sense of a word does not establish that the word is *ordinarily* understood in that sense." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 568 (2012).

Dictionary definitions of "encourage" include both Foodsmart's and Hulce's proffered meaning: encourage can mean "to attempt to persuade" or "urge" someone to do something; it can also mean "to spur on" an activity or "to make something more likely to happen." *Encourage*, Merriam-Webster Online, https://merriam-webster.com/dictionary/encourage (last visited Mar. 5, 2025); *Encourage*, Cambridge Online, https://dictionary.cambridge.org/dictionary/english/encourage (last visited Mar. 5, 2025).[3]

Here, read in context, the natural reading of "encourage" means "to persuade" or "urge" someone to pay for a service. Indeed, courts implicitly adopt this interpretation when analyzing whether calls or messages "encourage"—underscoring the ordinary and common meaning of the term. *See e.g.*, *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) (holding that calls that "*encouraged recipients* to engage in future purchasing activity" constituted "telemarketing," which shares the same definition as "telephone solicitation")

---

[3] The parties rely on present-day dictionary definitions even though we should consider the meaning "at the time Congress enacted the statute." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018) (internal quotation marks omitted). We have "not scoured dictionaries [in circulation]" when Congress passed the TCPA in 1991 or when the FCC implemented its regulations in 2003, *see United States v. Costello*, 666 F.3d 1040, 1043 (7th Cir. 2012), but note that the 2003 edition of Merriam-Webster contains the same definition of "encourage" and "purchase" as it does today.

(emphasis added); *Spiegel v. Reynolds*, No. 15 C 8504, 2017 WL 4535951, at *4 (N.D. Ill. Oct. 11, 2017) (explaining that a call was not a "telephone solicitation" when "it sought nothing more than gifts *from the call recipients*") (emphasis added); *Schulz v. Infogroup, Inc.*, No. 3:19-CV-1620-N, 2020 WL 4201636, at *3 (N.D. Tex. July 21, 2020) ("Nothing ... suggests that the [defendant] ultimately sought to sell or rent any service or product to [the plaintiff]").

We have likewise read a requirement that *someone* be encouraged into other provisions of the TCPA. The TCPA, for example, also prohibits "unsolicited advertisements," which are defined as "any material advertising the commercial availability or quality of any … services." 47 U.S.C. § 227(a)(5). This definition does not specify the target of the advertisement, yet we understand it to require "an objective basis *for recipients* to conclude they are being encouraged to buy." *Smith v. First Hosp. Labs., Inc.*, 77 F.4th 603, 608 (7th Cir. 2023) (emphasis added); *see also Ambassador Animal Hosp.*, 74 F.4th at 833 ("the fax [must] promote[] something that *the reader* can acquire in exchange for consideration") (emphasis added).[4]

Consider also the alternative phrasings available to Congress had it wanted to proscribe any calls and messages that made a purchase "more likely to happen." Congress could have, for example, defined "telephone solicitation" as a call

---

[4] We use these cases to demonstrate that the ordinary understanding of "encouraging" requires encouraging someone, rather than encouraging something. We do not, as the dissent raises, suggest that the definitions of "unsolicited advertisement" and "telephone solicitation" are alike in all regards. Indeed, we point out differences between the two provisions below. *See infra* note 5 and accompanying text.

initiated with the purpose of "causing" or "resulting in" a purchase. Both definitions would extend to Foodsmart's communications, as no one denies that Foodsmart would profit from Hulce's use of its services. "Encourage" in our commonsense understanding, however, connotes a targeted persuading or urging absent in these alternative words Congress could have used but did not. We are "doubtful … that Congress sought to accomplish" Hulce's proffered meaning "in a surpassingly strange manner what it could have accomplished in a much more straightforward way." *Azar v. Allina Health Servs.*, 587 U.S. 566, 577 (2019) (internal quotation marks omitted); *see also Advocate Health Care Network v. Stapleton*, 581 U.S. 468, 477 (2017) ("When legislators did not adopt 'obvious alternative' language, 'the natural implication is that they did not intend' the alternative" (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014))).

This commonsense understanding of "encouraging" is fortified when we read the statute "as a whole" and presume a change of word choice denotes a change in meaning. *Nielen-Thomas v. Concorde Inv. Servs., LLC*, 914 F.3d 524, 528 (7th Cir. 2019); *see also Ambassador Animal Hosp.*, 74 F.4th at 831 (explaining that Congress's use of a term in one section of an act but not another allows us to presume "Congress act[ed] intentionally and purposefully").

Take the TCPA's prohibition against "unsolicited advertisement" once more: the definition includes the qualifier "commercial," which "tells us that the advertising must relate to commerce or have profit as its primary aim." *Smith*, 77 F.4th at 607. Congress, however, did not define "telephone solicitations" as "commercial calls," meaning calls relating to commerce or with profit as their primary aim. Instead, Congress

required the proscribed calls to have a more particular purpose—"encouraging the purchase" of something. Hulce argues that Foodsmart's communications are "telephone solicitations" because they are "commercial messages" and "profit-seeking," but we decline to conflate "commercial" with "encouraging the purchase" given Congress's distinct use of these terms in separate TCPA provisions.[5]

The FCC's implementing regulations further reflect this distinction between general commercial activity and "encouraging the purchase." The provision concerning calls to residential lines using artificial or prerecorded voices provides that "no consent [is needed] if the call … is made for a commercial purpose but does not … constitute telemarketing." 47 C.F.R. § 64.1200(a)(3)(iii); *see Golan v. Veritas Ent., LLC*, 788 F.3d 814, 820–21 (8th Cir. 2015) (applying this exception). "Telemarketing" shares the same definition as "telephone solicitation," suggesting once more that "encouraging the purchase" is narrower than the general "commercial purpose" Hulce asserts spurred Foodsmart's calls.

We therefore conclude that "telephone solicitation" means the initiation of a call or message for the purpose of persuading or urging someone to pay for a service. Our conclusion carries an important implication with it: the person or entity the caller intends to encourage is also the party who makes the purchasing decision. That is, we agree with the district court that we cannot separate the encouragement element

---

[5] Given the different definitions of "telephone solicitation" and "unsolicited advertisement," Hulce's reliance on *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, which interprets "unsolicited advertisement" is inapposite. 80 F.4th 466, 470 (4th Cir. 2023).

from the purchasing element. *See also Trujillo v. Free Energy Sav. Co.*, No. 5:19-cv-02072-MCS-SP, 2020 WL 7768722, at *3 (C.D. Cal. Dec. 21, 2020) (finding no intent to encourage a purchase when text messages only "invite[d] the recipient to schedule free services"); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 209 (S.D.N.Y. 2024) (distinguishing its facts from *Trujillo* because *Trujillo* involved calls that "urged plaintiffs to use free services without encouraging plaintiff or any third party to purchase them").

A straightforward conclusion flows from this interpretation. Foodsmart's calls and messages do not fall within the definition of "telephone solicitation" because Foodsmart did not initiate them with the purpose of persuading or urging anyone to pay for its services. Indeed, while Foodsmart's purpose was to encourage Hulce to *use* its services, its purpose could not have been to encourage Hulce to *pay* for services that were free to him. Nor could Foodsmart's purpose have been to *encourage* CCHP to do anything. Although the communications may have resulted in CCHP ultimately paying Foodsmart, the communications and any encouragement within them were solely directed at Hulce. Hulce's claims, which rely on the existence of "telephone solicitations," therefore do not survive summary judgment.

**B**

We address Hulce's remaining arguments in brief. First, because we base our interpretation of "telephone solicitation" on clear statutory language, Hulce's appeals to the remedial nature of the TCPA or selective quoting of the legislative history do not carry the day. *See U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995) (explaining that

a broad remedial purpose "cannot trump" an interpretation drawn from the structure and logic of a statute).

Second, Hulce asserts that decisions such as *Less v. Quest Diagnostics Inc.*, 515 F. Supp. 3d 715, 717–18 (N.D. Ohio 2021), adopt his view of telephone solicitation. To the extent these non-precedential cases are in tension with our holding, we do not find them persuasive given their different procedural posture at the 12(b)(6) stage.

Lastly, Hulce insists that our conclusion ignores Foodsmart's purpose in initiating its communications, which he asks us to glean from Foodsmart's employment of marketing professionals and its informal use of emojis. Our dissenting colleague echoes this concern too by emphasizing that "telephone solicitation" focuses on the caller's purpose and perspective. We take this opportunity to reemphasize that Foodsmart's purpose is of primary concern, but under the facts alleged here, Foodsmart lacked the required purpose when contacting Hulce because it could not have intended to encourage him to pay for anything or to encourage CCHP at all. Job titles and informal messages do not alter the legal effect of the encouragement being separate from any purchasing.

\*   \*   \*

Do not overread our decision to create a sweeping loophole within the prohibition of telephone solicitations. We decide only that a "telephone solicitation" requires that the call or message be initiated with the purpose of persuading or urging someone to pay for property, goods, or services. Hulce has failed to demonstrate this on a unique set of facts, involving calls and messages directed solely at him and about

entirely free services available through his state and Medicaid funded healthcare plan. For this reason, the judgment of the district court is

AFFIRMED.

No. 24-1623 13

BRENNAN, *Circuit Judge*, dissenting. The parties contest the reading of the provision in the Telephone Consumer Protection Act of 1991 that defines "telephone solicitation" as:

> the initiation of a telephone call or message *for the purpose of encouraging* the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

47 U.S.C. § 227(a)(4) (emphasis supplied).

To Hulce, this definition does not require that the purchaser be the one solicited. Foodsmart reads the statute differently—that Hulce was not encouraged to purchase anything, so the calls and texts he received fall outside this definition. The district court read this statute to require "the communication's purpose to be to encourage *someone* to make a purchase." Dist. Ct. Op. at 7. To me, that court's misstep was to read "for the purpose of encouraging" from the viewpoint of the recipient instead of the caller.

The fundamental inquiry of the "telephone solicitation" provision is the caller's purpose, not what effect the call has on the recipient. *See Golan v. Veritas Ent., LLC*, 788 F.3d 814, 820 (8th Cir. 2015) (concluding the calls' "purpose controlled whether they were 'telemarketing'"). Put another way, the question is whether the caller attempted to encourage the purchase of a service, not whether the recipient of the call was the individual encouraged to make that purchase.

The sentence structure of § 227(a)(4) illustrates this reading. The provision concerns the caller's actions. "[F]or the purpose of" follows the prohibition against initiating a call, a limit on the caller's actions. The point of view does not shift before the "for the purpose of" clause, so the prohibition

continues to be from the caller's viewpoint. Section 227 refers to the "called party" eight times and refers to the call's "recipient" eleven times. So, when Congress wanted to switch to the recipient's viewpoint, it knew how to. Those phrases should not be read into this provision.

The provision's use of passive voice also supports this reading. The statute does not say that the message must be "for the purpose of encouraging the recipient to purchase" a service. Indeed, § 227(a)(4) does not mention the recipient at all. The statute does not speak to who makes the ultimate purchase. So long as the caller intends to "encourag[e] the purchase" of a service, the statutory definition is satisfied.

Congress's use of passive voice "focuses on an event … without respect to a specific actor." *Dean v. United States*, 556 U.S. 568, 572 (2009); *see also Watson v. United States*, 552 U.S. 74, 81 (2007) (same). The Supreme Court considered this point in *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023). There, a bankruptcy statute prevented discharge of debt "to the extent obtained by … false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). The debtor in *Bartenwerfer* did not commit any fraud. 598 U.S. at 72. Rather, her boyfriend, with whom she sold a house, made material misrepresentations to the buyer, which ultimately resulted in a large damages award in state court. *Id.* at 72–73. But because the debtor co-owned the house, she was jointly liable for the damages. *Id.* When she filed for bankruptcy, the bankruptcy court found the debt nondischargeable, as it was incurred by somebody's fraud—even if not the debtor's. *Id.* at 73.

The Supreme Court in *Bartenwerfer* agreed with the bankruptcy court. The debtor argued that the statute's most natural reading was to prevent discharge of debt incurred only by

the debtor's fraud. *Id.* at 75. But the Court held that the statute's use of passive voice "pulls the actor off the stage." *Id.* Instead, the "debt must result from someone's fraud, but Congress was 'agnosti[c]' about who committed it." *Id.* at 76 (alteration in original) (quoting *Watson*, 552 U.S. at 81). So too here. Given how § 227(a)(4) is written, Congress was agnostic about who the purchaser is—the call's recipient or someone else.

No doubt, "context can confine a passive-voice sentence to a likely set of actors." *Bartenwerfer*, 598 U.S. at 76. But the context of § 227(a)(4) is not limiting. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167–69 (2012) (advising courts to construe a statute "as a whole"). As described above, the rest of § 227 shows that if Congress wanted to limit who must be encouraged to purchase something—rather than encouraging a purchase generally—it "has shown that it knows how to." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 814 (2024).

Once the statute's passive voice is put in context, dictionary definitions of "encourage" are not at odds with Hulce's reading of the statute. For instance, the district court defined "encourage" as "to attempt to persuade: urge." Dist. Ct. Op. at 6 (quoting *Encourage*, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/encourage (last visited Mar. 10, 2025)). To the district court, this definition cut against finding a statutory violation, as Foodsmart did not "urge" Hulce to purchase anything. But this assumes the urging must be of a person, rather than of a purchase.

No court of appeals has addressed this precise issue, and district courts have reached conflicting results on little

reasoning. The cases cited in the majority opinion about the "unsolicited advertisement" provision of the TCPA do not mandate Foodsmart's reading. (In fact, Foodsmart argued in its brief that that provision and § 227(a)(4) are "apples and oranges.") For the "unsolicited advertisement" provision, liability can attach purely on an objective standard. *Ambassador Animal Hosp., Ltd. v. Elanco Animal Health Inc.*, 74 F.4th 829, 833 (7th Cir. 2023). What matters is whether the material advertises "the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5). Because the sender's intent is irrelevant, courts look to the advertisement's objective impact on the person to view the advertisement—the recipient. But the "telephone solicitation" provision looks to the caller's subjective purpose, so the two provisions are necessarily interpreted differently.

I read the text of § 227(a)(4) and its surrounding context to prohibit telephone solicitation of a consumer on the do-not-call registry when that contact encourages the purchase of a good or service—regardless of whether the call's recipient is the purchaser. I therefore respectfully dissent.